FILED
United States Court of Appeals
Tenth Circuit

May 29, 2009

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

  Plaintiff - Appellee,

  v.

ANTHONY L. CIOCCHETTI,

  Defendant - Appellant.

No. 08-8051
(D. Ct. No. 2:07-CR-00246-ABJ-1)
(D. Wyo.)

**ORDER AND JUDGMENT**[*]

Before **TACHA**, **O'BRIEN**, and **McCONNELL**, Circuit Judges.

This appeal arises out of a series of efforts by defendant Anthony Ciocchetti to acquire funding for a day care center to be built in Gillette, Wyoming. Based on the documents Mr. Ciocchetti submitted to various financial institutions, Mr. Ciocchetti was indicted and charged with four counts of making materially false statements in connection with bank loan applications in violation of 18 U.S.C. § 1014; one count of mail fraud in violation of 18 U.S.C. § 1341; one count of bank fraud in violation of 18 U.S.C. § 1344; and one count of money laundering in violation of 18 U.S.C. § 1957 (a), (b)(1). After a jury trial, Mr. Ciocchetti was acquitted on some of the counts, but convicted on one of the

---

[*]This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

false statement counts and on the bank fraud count. The sole issue on appeal is the calculation of the loss amount by the district court in arriving at Mr. Ciocchetti's sentence. We take jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), and we AFFIRM.

## I. DISCUSSION

Under United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") § 2B1.1(b)(1), the base offense level for certain economic offenses is increased according to the loss. Application Note 3 to that Guideline instructs the sentencing court to select the higher of the intended loss or the actual loss. U.S.S.G. § 2B1.1 cmt. n.3(A). In this case, the district court relied on a calculation of the intended loss that resulted from the offenses of conviction, taking into account the defendant's relevant conduct as to the other offenses. Specifically, the district court found an intended loss of $5,032,275.16 based on loan amounts Mr. Ciocchetti had fraudulently obtained or sought to obtain, and based on construction and architectural work for which he never paid. Because this loss was between $2,500,000 and $7,000,000, the offense level increased by 18. *See* U.S.S.G. § 2B1.1(b)(1)(J)–(K).

The Guidelines define intended loss as "(I) . . . the pecuniary harm that was intended to result from the offense; and (II) includes intended pecuniary harm that would have been impossible or unlikely to occur (e.g., as in a government sting operation, or an insurance fraud in which the claim exceeded the insured value.)." U.S.S.G. § 2B1.1 cmt. n. 3(A)(ii). In this circuit, "it is an unsettled question whether intended loss requires [the

-2-

defendant's] knowledge that the loss is a virtual certainty or only [his] knowledge that the loss is probable." *United States v. Baum*, 555 F.3d 1129, 1135 (10th Cir. 2009). Even assuming, however, that the proper standard is the higher standard, the district court did not clearly err in finding intended losses of more than $2,500,000. *See United States v. Burridge*, 191 F.3d 1297, 1302 (10th Cir. 1999) (a "district court's . . . ultimate conclusion regarding [a defendant's] intent to return . . . funds are findings of fact subject only to clear error review."); *see also* U.S.S.G. § 2B1.1 cmt. n.3(C) ("[T]he court's loss determination is entitled to appropriate deference.").

"[R]eview under the 'clearly erroneous standard' is significantly deferential." *Concrete Pipe Prods. of Cal., Inc. v. Constr. Laborers Pension Trust*, 508 U.S. 602, 623 (1993). We will affirm so long as the district court's finding of intent has factual support in the record. *See United States v. Jarvison*, 409 F.3d 1221, 1224 (10th Cir. 2005). There is ample factual support in this case. The sentencing transcript makes clear that the district court undertook a careful and thorough analysis of all the transactions, documents, and other evidence at trial in determining Mr. Ciocchetti intended more than $2,500,000 in losses. Although Mr. Ciocchetti claims that he intended for the day care center to be a successful venture, rendering him able to repay his creditors in the future, the district court noted that Mr. Ciocchetti had engaged in a "pattern" of deception and had a "history" of not repaying fraudulently obtained loans. Indeed, the record reveals that Mr. Ciocchetti arrived in Gillette followed by a cache of creditors. Thus, Mr. Ciocchetti's fraudulent application for a $3,300,000 line of credit from one bank alone is sufficient to

support the district court's finding that Mr. Ciocchetti intended losses of more than $2,500,000.[1]  Finally, to the extent Mr. Ciocchetti argues that any losses must be reduced because the creditor has since repossessed property securing the loan, it is clear that the district court did not include in its loss calculation any amount from any such loan that Mr. Ciocchetti identified in his objections to the presentence report.[2]

## II.  CONCLUSION

The district court did not clearly err in finding an intended loss of $5,032,275.16. WE AFFIRM.

ENTERED FOR THE COURT,


Deanell Reece Tacha
Circuit Judge

---

[1]Mr. Ciocchetti contends that the district court could not use this amount because had it been approved, he was going to use it to repay other creditors.  But that would serve only to shift the loss amount to that creditor, not to reduce the amount of money Mr. Ciocchetti owed and had no intention of repaying.  *See Burridge*, 191 F.3d at 1302 (explaining that the defendant was "steal[ing] from Peter to pay Paul") (quotations omitted).

[2]The district court did include one $24,494 loan to which Mr. Ciocchetti had objected, but the district court did so because there was no evidence supporting his belief that the collateral had been repossessed and sold.